UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| KENTUCKY PETROLEUM OPERATING LTD, | ) ) ) | Civil No. 12-164-ART |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| MAX L. GOLDEN, et al., | ) ) ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendants Max L. Golden and Andrew N. Golden have moved for summary judgment in this matter.[1] R. 28; R. 34. They argue that the doctrines of claim and issue preclusion require the Court to grant summary judgment on the plaintiff's remaining claims against them. *See* R. 34. While the doctrine of claim preclusion does not apply to this case, issue preclusion does, because KPO's complaint involves previously arbitrated issues. Accordingly, the Court will grant their motion for summary judgment.

### BACKGROUND

In 2011, plaintiff Kentucky Petroleum Operating Ltd. ("KPO") entered into separate agreements with Macar and 7921 (the "Macar Agreement" and the "7921 Agreement") for the purchase and sale of oil and gas wells, leasehold interests, easements, and related equipment in Laurel County, Kentucky. R. 1-2 at 2–3. KPO and 7921 also signed a management agreement (the "Management Agreement"), requiring 7921 to

---

[1] Defendants Macar Investments, LLC, and 7921 Energy, LLC, also joined in this motion for summary judgment. *See* R. 28 at 1; R. 34 at 1. The Court previously granted summary judgment in favor of Macar and 7921. R. 32 at 5. Accordingly, only the Goldens remain as movants.

supervise certain interests subject to the Macar and 7921 Agreements. *Id.* at 3. The Goldens are principals of both Macar and 7921. *Id.* at 3, 6. When the relationship between KPO and the defendants soured, Macar and 7921—but not the Goldens— instituted an arbitration proceeding against KPO. R. 4-1. Soon thereafter, KPO filed suit against all four defendants in the Laurel Circuit Court, claiming common law fraud and breach of contract. R. 1-2. The defendants removed the case to this Court. R. 1. On their motion, R. 4; R. 5, the Court stayed this action pending arbitration. R. 13.

During the arbitration, 7921 and Macar claimed that KPO had breached their various agreements and owed them money, overriding royalty interests, and carried working interests. R. 28-1 at 2. KPO raised several defenses, including lack of arbitral jurisdiction, fraud and misrepresentation, and breach of contract. *Id.* The arbitrator rejected most of KPO's theories. *Id.* at 2–3. He then determined that KPO and Kentucky Petroleum Operating, LLC, a related entity, had breached the Macar and 7921 Agreements. *Id.* at 5; R. 28-4 at 1–2 (clarifying that the original arbitration award applied to both KPO and Kentucky Petroleum Operating, LLC). The arbitrator granted Macar and 7921 damages and interests in certain wells and leases. R. 28-1 at 5–6.

The defendants immediately moved to lift the stay of this proceeding. R. 24. When the Court granted their motion, R. 26 at 2, they moved for summary judgment, R. 28. This motion requested two forms of relief. First, Macar and 7921 asked the Court to enter judgment on the arbitration award under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. *Id.* at 8–10. The Court granted this relief in a separate order and dismissed Macar

and 7921 from this case.[2] R. 32 at 5. Second, the Goldens sought summary judgment on KPO's fraud claims against them, arguing that the arbitration award has a preclusive effect on this proceeding. R. 28 at 10–14. The Court ordered the parties to file supplemental briefing on this issue, R. 32 at 5, which it now resolves in favor of the Goldens.

**DISCUSSION**

Before determining whether the arbitration award precludes KPO from pursuing its claims against the Goldens in federal court, the Court would normally decide which jurisdiction's laws govern this question. Arbitration awards do not receive recognition under the federal full faith and credit statute. 28 U.S.C. § 1738; *McDonald v. City of West Branch*, 466 U.S. 284, 287–88 (1984). Thus, judicially fashioned preclusion rules control the decision whether to accord an arbitration award preclusive effect. *McDonald*, 466 U.S. at 288. A federal court sitting in diversity employs the choice-of-law rules of the forum state—Kentucky, in this instance—to answer *res judicata* questions. *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 303 n.4 (6th Cir. 2011) (citing *Taveras v. Taveraz*, 477 F.3d 767, 783 (6th Cir 2007)); *see also Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1147 (10th Cir. 2007). That is, the federal court asks whether Kentucky, as the forum state, would apply its own law or that of another state in determining the preclusive effect of the arbitration.

This case presents a particularly difficult choice-of-law problem. Three contracts—the 7921, Macar, and Management Agreements—are at issue. R. 4-2; R. 4-3;

---

[2] Macar and 7921 have since returned as parties to this case due to its consolidation with a related matter. *See* R. 35.

R. 4-4. The parties picked Texas law to govern all disputes arising out of two of these agreements, R. 4-3 at 18; R. 4-4 at 9, and Kentucky law to govern the third, R. 4-2 at 17. Important elements of each transaction relate to both Texas and Kentucky. *See* R. 34 at 2; R. 36 at 3–4.

The Court, however, need not prognosticate how Kentucky courts would resolve this quandary because both Texas and Kentucky courts would reach the same conclusions concerning claim and issue preclusion. Therefore, the Court will leave these tricky choice-of-law matters for another day and will turn now to the real question: whether KPO may proceed with its fraud claims in federal court. Broadly speaking, claim preclusion (traditionally known as *res judicata*) refers to "the preclusive effect of a judgment in foreclosing litigation of matters that should have been raised in an earlier suit." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 376 n.1 (1985). Issue preclusion (traditionally known as collateral estoppel) refers to "the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Id.* In this case, because the Goldens were neither parties to the arbitration nor privies to a party, they cannot prevail on their claim preclusion argument. However, since the arbitrator thoroughly considered KPO's fraud claims, the doctrine of issue preclusion prevents the parties from relitigating that question in federal court.

**I.     Claim Preclusion**

Kentucky and Texas have adopted similar tests to determine whether claim preclusion is appropriate. In Kentucky, (1) there must be an identity of parties between the two actions; (2) there must be an identity of the two causes of action, and (3) the prior action must have been decided on the merits. *Miller v. Admin. Office of Courts*, 361

4

S.W.3d 867, 872 (Ky. 2011). In Texas, claim preclusion requires proof of: (1) a final judgment on the merits by a court of competent jurisdiction; (2) the identity of the parties; and (3) a second action based on claims that were raised or could have been raised in the first action. *Maxson v. Travis Cnty. Rent Account*, 21 S.W.3d 311, 315–16 (Tex. Ct. App. 1999). To satisfy the identity requirement in either state, the Goldens must show that they were actual parties to the arbitration or in privity with Macar and 7921. *See Moorhead v. Dodd*, 265 S.W.3d 201, 203 (Ky. 2008) ("Claim preclusion bars subsequent litigation between the same parties or their privies."); *Maxson*, 21 S.W.3d at 315 (explaining that claim preclusion is available to "those in privity with" the parties to a prior proceeding).

But the Goldens cannot make this showing. First, they were not actual parties to the arbitration. *See* R. 28-1 at 1 (listing only 7921 and Macar as parties); R. 28-4 (same). Second, in neither Texas nor Kentucky do the Goldens qualify as Macar and 7921's privies. Begin with Texas: Texas law considers a nonparty in privity under three circumstances: (1) where he controlled an action even if he was not a party to it; (2) where his interests were represented by a party to the action; or (3) where he is a successor in interest, deriving his claims through a party to the prior action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996). The Goldens, as the sole managing members of Macar and 7921, claim to have exerted control over the arbitration proceeding. R. 34 at 7, 12. It certainly stands to reason that they took an active role in the arbitration, given their exclusive authority over the companies. *Cf. J.M.S. & Assocs., Inc. v. Eastman Kodak Co.*, 156 F.3d 1230, at *3 (6th Cir. 1998) (unpublished table decision) (finding control-related privity between an owner and his company under Michigan and federal law). But Texas courts have held that actions taken by an individual as a corporate

5

representative at trial do not amount to "control" sufficient for privity, where the subsequent suit is against the same person in his individual capacity. *McNeil Interests, Inc. v. Quisenberry*, 407 S.W.3d 381, 389 (Tex. Ct. App. 2013) (citing Restatement (Second) of Judgments § 36(2) for the proposition that "[a] party appearing in an action in one capacity, individual or representative, is not thereby . . . entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity."). Through its fraud claims, KPO seeks recovery against the Goldens in their individual capacities. *See* R. 36 at 7; *see also Sanchez v. Mulvaney*, 274 S.W.3d 708, 711–12 (Tex. Ct. App. 2008) (while members of a limited liability company are not individually liable for the company's breach of contract, they may be subject to individual liability for their own fraudulent or tortious acts). So, even if the Goldens took an active role in the arbitration, perhaps by hiring an attorney or serving as Macar and 7921's representatives, such control "would not support a finding of privity under the Restatement (Second) of Judgments." *McNeil Interests*, 407 S.W.3d at 389–90.

Kentucky courts have reached the same result. Like Texas, Kentucky recognizes the rule of different capacities. A very recent, though unpublished, case illustrates how a Kentucky court would reason through this matter. In *True Gospel Church of God in Christ v. Church of God in Christ*, No. 2012-CA-228, 2013 WL 3388742 (Ky. Ct. App. July 5, 2013), the Kentucky Court of Appeals considered the preclusive effect of two cases involving a church and its members. The church, True Gospel Church, had incorporated itself anew as the True Ministries Church. *Id.* at 1. In the first case (the "True Ministries case"), only True Ministries Church and three of its members were named parties. *Id.* In the second case (the "True Gospel case"), only "True Gospel

6

Church, by and through its members," was a party. *Id.* The court found that True Ministries' membership—which was the same as True Gospel's membership—had controlled the litigation in the True Ministries case, but that they did so in their representative capacity on behalf of the corporation. *Id.* at 3. In contrast, the True Gospel case represented the members' individual interests. *Id.* Therefore, adopting the Restatement (Second) of Judgment's rule of different capacities, the Kentucky Court of Appeals found no privity for preclusion purposes and permitted the True Gospel case to go forward. *Id.* This matter presents the identical posture. To the extent the Goldens participated in the preceding arbitration, they acted in their representative capacities. This suit, which lists them as parties in their individual capacities, is therefore not precluded.

## II. Issue Preclusion

Despite their lack of identity or privity with Macar and 7921, the Goldens may still proceed with their issue preclusion argument, since neither Texas nor Kentucky requires mutuality to invoke issue preclusion. *See Miller*, 361 S.W.3d at 872 ("The doctrine of issue preclusion is properly asserted by a person who was not a party to the former action nor in privity with such a party." (internal quotation marks omitted)); *Eagle Props., Ltd. V. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990) (holding that only the party against whom collateral estoppel is asserted must be a party or in privity with a party in the prior litigation). For the reasons discussed below, the doctrine of issue preclusion requires the Court to grant summary judgment in favor of the Goldens.

Once again, Kentucky and Texas follow highly similar approaches to issue preclusion. In Kentucky, in order for issue preclusion to operate as a bar to further litigation, (1) at least one party to be bound in the second case must have been a party in

the first case; (2) the issue in the second case must be the same as the issue in the first case; (3) the issue must have been actually litigated; (4) the issue must have been actually decided in the first case; and (5) the decision on the issue in the prior action must have been necessary to the court's judgment and adverse to the party to be bound. *Miller*, 361 S.W.3d at 872. In Texas, a party seeking to assert collateral estoppel must establish that: (1) the issues sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those issues were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action (meaning that the party against whom the doctrine is asserted was a party or in privity with a party). *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801–02 (Tex. 1994). Both states' issue preclusion tests shake out the same way in this case: KPO may not proceed with its claim against the Goldens in federal court.

**Parties Cast As Adversaries:** As the first element of Kentucky's test and the third element of Texas's test, one party to be bound by the doctrine of issue preclusion must have been party to the arbitration. Here, there is no disputing that KPO was a defendant in the arbitration proceeding. *See* R. 28-1 at 1. Accordingly, the Goldens have satisfied this element of Kentucky and Texas's issue preclusion tests.

**Full and Fair Litigation:** The second and third elements of Kentucky's test align perfectly with the first element of Texas's test. That is, both states require the party seeking issue preclusion to show that, during the arbitration, the parties "actually" or "fully and fairly" litigated the same issue that the plaintiff seeks to litigate in this case.

The arbitration featured precisely the same issue present in this case: alleged fraud in the inducement by the Goldens, Macar, and 7921. KPO repurposed its complaint, R. 1-

2, as part of its answer and counterclaim in the arbitration proceeding. *See* R. 28-2 at 3; R. 31-1 at 2; R. 31-2 at 2. In other words, its arguments—and the very documents it used to convey those arguments—were perfectly identical in the two proceedings. *Id.* KPO's claim that the Goldens, Macar, and 7921 committed fraud in the inducement, R. 1-2 at 3–9, therefore appeared in both this case, as a cause of action against all four defendants, and in the arbitration, as a defense or counterclaim against Macar and 7921. *See Zea v. Valley Feed & Supply, Inc.*, 354 S.W.3d 873, 878 (Tex. Ct. App. 2011) (finding that claims filed in court and counterclaims and defenses filed during arbitration counted as the "same issues"); *Moore v. Gas & Elec. Shop*, 287 S.W. 979, 980 (Ky. 1926) (applying res judicata because the appellant's claim perfectly echoed his counterclaim in a previous matter).

Moreover, this counterclaim was fully and fairly litigated. Despite its streamlined procedures, arbitration offers parties a fair opportunity to litigate their claims. *See Zea*, 354 S.W.3d at 878 (finding that an arbitration proceeding provided a full and fair opportunity to litigate the issue under consideration); *Deshons v. Scott's Adm'r*, 260 S.W. 355, 357 (Ky. 1924) (finding that an arbitrator's decision merits the same preclusive effect as a decision by a court of competent jurisdiction); *see also Stewart Servs., Inc. v. Tilford Mech. Contractors, Inc.*, No. 2003-CA-523, 2004 WL 1046370, at *7 (Ky. Ct. App. May 7, 2004) (recognizing an arbitration award as *res judicata*).

Still, KPO complains that the discovery timeline during arbitration was so compressed that it could not conduct adequate discovery on the fraud question. R. 30 at 2–3 (stating that "limited deadlines were imposed for all allegations including the breach of contract claims and any fraud claims"). But, as the Goldens point out in twin affidavits, KPO had every opportunity to request a more generous discovery timeline. *See*

R. 31 at 3–4; R. 31-1 at 2–3; R. 31-2 at 2–3. KPO knew in advance that its fraudulent inducement claims had bearing on the arbitration, *see* R. 13 at 2 (explaining that parties must arbitrate fraudulent inducement claims concerning the contract as a whole where the contract contains an arbitration clause), yet it chose not to conduct additional discovery or present its arguments more forcefully. As Learned Hand once wrote, once parties have decided to adopt arbitration, "they may not hedge it about with those procedural limitations which it is precisely its purpose to avoid. They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery." *Am. Almond Prods. Co. v. Consol. Pecan Sales Co.*, 144 F.2d 448, 451 (2d Cir. 1944). In short, KPO made its own bed, and that is where KPO must now lie.

**The Arbitrator's Decision:** Finally, the arbitrator actually decided the fraud issue, which was necessary or essential to his judgment—and this satisfies the remaining elements of Kentucky and Texas's issue preclusion tests. In his opinion, the arbitrator explicitly ruled on KPO's fraud counterclaims. R. 28-1 at 2. He did not "find fraud on the part of either of the Goldens or anyone else acting for Macar or for 7921." *Id.* While he was "persuaded that the Goldens took advantage of" KPO, he explained that nothing in their behavior rose to the level of fraud. *Id.* In short, any injury to KPO resulted from its failure to perform the "kinds of due di[l]igence that are usually associated" with oil- and gas-related transactions. *Id.*

Because KPO raised fraud as a defense to Macar and 7921's breach of contract claims, *see id.*, resolving this question was clearly necessary to the arbitrator's disposition of this matter. KPO contests this conclusion, arguing that the arbitrator's fraud-related

10

ruling was extraneous because the Goldens were not parties to the arbitration proceeding. R. 36 at 8. KPO argues that the "arbitrator was faced with claims arising through written contracts only" and the fraud claims "had no bearing upon the contractual issues heard by the arbitrator." *Id.* But KPO's reliance on fraud as a defense during the arbitration undermines its arguments against summary judgment. Had the arbitrator concluded that the Goldens had committed fraud, the outcome of the arbitration would necessarily have changed. The doctrine of issue preclusion therefore prevents KPO from relitigating its fraud claims against the Goldens.

## CONCLUSION

Accordingly, it is **ORDERED** that:

(1) The defendants' motion for summary judgment, R. 28; R. 34, is **GRANTED**.

This the 21st day of January, 2014.

Signed By:
*Amul R. Thapar* AT
United States District Judge

11