UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| KENTUCKY PETROLEUM OPERATING LTD., | ) ) ) | |
| | ) | Civil No. 12-164-ART |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| MAX L. GOLDEN, et al., | ) ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

A final judgment often signals the end of a lawsuit. Not so in this litigation. This Court's final judgment and order confirming an arbitration award merely heralded the beginning of additional disputes about the enforcement of that order and the underlying award. Although courts have "inherent authority" to implement their own orders, this authority is not boundless: An order must be sufficiently specific before a court can either issue contempt sanctions against, or forcibly garnish money from, a noncompliant defendant. Because the plaintiffs make a colorable claim that the defendants flouted two of the Court's specific directives, this Court will hold a hearing to determine whether to hold the defendants in contempt. But because the plaintiffs still dispute the sum of money owed, this Court must quash their latest writs of garnishment.

## BACKGROUND

The long history of the present litigation merits some explanation. In 2011, plaintiffs Macar Investments, LLC ("Macar") and 7921 Energy, LLC ("7921") entered

into three contracts with Kentucky Petroleum Operating, LLC ("KPO LLC") and Kentucky Petroleum Operating, Ltd. ("KPO Ltd.") (collectively "KPO defendants"). *See* R. 4-2 (Purchase and Sale Agreement between 7921 and the KPO defendants); R. 4-3 (Purchase and Sale Agreement between Macar and KPO LLC); R. 4-4 (Management Agreement between 7921 and KPO Ltd.). These contracts provided that Macar and 7921 would sell oil and gas wells to the KPO defendants, who would in turn pay various royalties from the profits generated by those oil and gas wells back to Macar and 7921, and would assign to Macar and 7921 various property interests in those wells. *See* R. 4-2 at 4–5; R. 4-3 at 4. Notably, none of these contracts specified how to calculate the various royalties and interests that they listed—"overriding royalty interest," "working interest," "net revenue interest," "net profits participation interest," "carried net profits interest," and "net profits." Each contract, however, specified that any disputes between the parties must be resolved through binding arbitration. R. 4-2 ¶ 9.09(b); R. 4-3 ¶ 9.09(b); R. 4-4 ¶ 7.7.

In 2012, Macar and 7921 claimed that the KPO defendants breached the contracts by failing to pay the purchase price for the oil and gas wells, as well as the promised royalties and profits generated from ownership of property interests in those wells. *See* R. 4-1 at 9–10. Relying on the contractual dispute-resolution provisions, Macar and 7921 moved for arbitration. In 2013, an arbitrator resolved their claims for breach. R. 28-1 (Final Arbitration Award); R. 28-4 (Disposition of Motion to Clarify Final Arbitration Award). The arbitrator's decision consisted of six orders: 1) for KPO LLC to pay Macar $466,187 for the sale of oil and gas wells; 2) for KPO LLC to assign an "overriding royalty interest" and a "net profits participation interest" in its wells to Macar within 60

days; 3) for the KPO defendants to assign an "overriding royalty interest," a "net profits participation interest," and a "carried net profits interest" in its wells to 7921 within 60 days; 4) for the KPO defendants to use their "best efforts" to notify third parties of 7921's ownership of overriding royalty interests in the wells; 5) for the KPO defendants to pay any "net profits participation interest" and "carried net profits interest" in arrears to 7921; and 6) for the KPO defendants to record assignments of the "Philpot Rights of Way" within 60 days. R. 28-1 at 5–6.[1]

This Court confirmed and entered judgment on the arbitration award. R. 33. Subsequently, Macar and 7921 asked the Court to enforce the judgment by holding the KPO defendants in contempt for failing to take action required by the arbitration award and by garnishing money they wrongfully withheld. *See* R. 63 (Motion for Contempt); R. 62 (Order for a Writ of Garnishment). In response, the KPO defendants protested the motion for contempt sanctions and moved to quash the Court's order for garnishment. *See* R. 70 (Response to Motion for Contempt Sanctions); R. 65 (Motion to Set Aside Writ of Garnishment). The Court ordered supplemental briefing from the parties to address additional legal issues and to provide citations to legal authority. *See* R. 74. The Court explained that upon receiving the briefs, it would set a hearing date if it found that Macar and 7921 have made "colorable arguments" in favor of assessing civil contempt sanctions against the KPO defendants. R. 74 at 5.

---

[1] Although the arbitration award's order lines mention only KPO Ltd., the arbitrator intended for the orders to apply to KPO LLC where appropriate. R. 28-4 at 1 (characterizing the omission of KPO LLC from the final arbitration award as a "classic clerical error"). This passage refers to the appropriate defendants bound by each order.

3

## DISCUSSION

For the Court to hold the KPO defendants in contempt, Macar and 7921 must show that the KPO defendants "violated a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Elec. Workers Pension Trust Fund of Local Union No. 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (internal quotation marks omitted). However, such contempt sanctions are generally improper where the failure to act is merely the failure to pay money pursuant to a court judgment. *United States Leather, Inc. v. Mitchell Mfg. Grp., Inc.*, 276 F.3d 782, 789 (6th Cir. 2002); *Carter v. Fleece*, 288 F. 193, 194 (6th Cir. 1923). In those cases, Fed. R. Civ. P. 69(a) requires district courts to enforce the money judgment through execution according to the "practice and procedures" of the state in which the district court is located.

Macar and 7921 request the Court to issue contempt sanctions for all of the KPO defendants' failures—to pay a money judgment, to assign property interests in oil and gas wells, to use best efforts to notify third parties of these interests, and to pay royalties and profits arising by virtue of ownership of the property interests in oil and gas wells. R. 63; R. 71 at 4, 14. But issuing contempt sanctions is not the answer to all of these complaints. Only the acts of timely recording property interests and using "best efforts" to notify third parties of these interests are "definite and specific" orders of the Court to act in a particular manner. Because Macar and 7921 have made "colorable" claims that the KPO defendants violated these commands to act, the Court will grant a hearing to determine whether contempt sanctions are warranted. On the other hand, the KPO defendants' refusal to pay royalties and profits amounts to a failure to pay money owed under a

contract. And Kentucky law authorizes plaintiffs to recover money owed through garnishment—not through contempt sanctions. But in this case, Macar and 7921 may not utilize garnishment to collect payments for royalties and profits, because the parties dispute the amount due. Since the arbitrator must first resolve this dispute and reduce the amount due to a definite sum of money, the Court cannot enforce the garnishment order.

I. **The KPO Defendants' Failure to Comply with This Court's Orders to Assign Property Interests and to Notify Third Parties Using "Best Efforts" Are Grounds for Contempt Sanctions.**

An order to transfer a property interest and an order to use "best efforts" are both sufficiently specific commands that their violation provides grounds for contempt sanctions. *See Satyam Computer Servs., Ltd. v. Venture Global Eng'g, LLC*, 323 F. App'x 421, 430–31 (6th Cir. 2009) (affirming that a failure to take "all reasonable steps" to comply with an order to transfer property merits a finding of contempt); *Glover v. Johnson*, 934 F.2d 703, 705 (6th Cir. 1991) (holding that a failure to make all reasonable efforts to comply with a court order to improve prison conditions provided grounds for contempt sanctions); *Sarkes v. Wells*, 37 F.2d 339 (6th Cir. 1930) (upholding sanctions for failure to comply with a court order to transfer property).

The KPO defendants disobeyed these sufficiently specific commands to assign property interests to 7921 and Macar and to use best efforts to notify third parties of this assignment in two ways. First, the KPO defendants did not assign property interests within the required 60-day period. *See* R. 28-1 at 5–7 (ordering the KPO defendants to assign and record all property interests within sixty days of the entry of the arbitration award on August 6, 2013); R. 68-3 (assigning interests to 7921 in January 2014); R. 76-1 (noting that an easement was recorded on June 9, 2014). Second, Macar and 7921

5

presented evidence that the KPO defendants affirmatively concealed information about 7921's interests in the oil and gas properties from third parties. *See* R. 63-3 (November 11, 2013 Crude Oil Division Order omitting mention of either 7921 or Macar's interest in the oil well); R. 63-6 (January 7, 2014 Crude Oil Division Order omitting mention of either 7921 or Macar's interest in the oil well). If true, this evidence suggests that the KPO defendants flouted their obligation to use their "best efforts" to notify parties that 7921 had a legal interest in the properties. *See* R. 28-1 at 5 (ordering the KPO defendants to use "best efforts" to get third parties to acknowledge and account for 7921's ownership of overriding interests). Both of these failures are at least colorable grounds for issuing civil contempt sanctions.

The KPO defendants argue that sanctions are not warranted because they ultimately assigned all the deeds, albeit after the Court's deadline. R. 76 at 4. No harm, they say, so no foul. But there may be harm warranting sanctions from the delay in assigning the deeds. Sanctions are appropriate where a defendant's failure to comply with a court order causes a plaintiff to incur costs. *See Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 596 (6th Cir. 1999) (upholding compensatory civil contempt sanctions requiring the contemnor to pay the attorneys' fees his opponent incurred as a result of his noncompliance). Macar and 7921 claim that the KPO defendants' delay led to 7921 being named in a lawsuit in state court. R. 63 at 6; R. 71 at 4. They also assert that the delay in recording the interest in oil and gas wells prohibited them from collecting payments from those wells. *See* R. 71 at 4. These facts suggest that Macar and 7921 incurred costs as a result of the KPO defendants' noncompliance, and provide additional support for their colorable claim for sanctions.

Nowhere in their response or sur-reply do the KPO defendants address the argument that they failed to use "best efforts" to notify third parties of 7921's property interests in oil and gas wells. The Court finds the KPO defendants conceded this point. *See Humphrey v. U.S. Att'y Gen. Office*, 279 F. App'x 328, 331 (6th Cir. 2008) ("[I]f a [party] fails to respond or to otherwise oppose a . . . motion, then the district court may deem the [party] to have waived opposition . . . .").

The KPO defendants' failure to act in a timely and good-faith manner in accordance with this Court's orders may provide grounds for issuing civil contempt sanctions after a hearing.

## II. Macar and 7921 Have Not Shown That They Possess a Definite, Undisputed Money Judgment That Would Allow Them to Collect Royalties Through Garnishment.

Courts enforce money judgments through execution procedures consistent with state law. Fed. R. Civ. P. 69(a); *United States Leather, Inc. v. Mitchell Mfg. Grp., Inc.*, 276 F.3d 782, 789 (6th Cir. 2002) (interpreting Fed. R. Civ. P. 69(a)). Kentucky law allows plaintiffs to execute money judgments through garnishment proceedings. *Wade v. Poma Glass & Specialty Windows, Inc.*, 394 S.W.3d 886, 894–95 (Ky. 2012) (holding that the term "execution" as referenced in a statute of limitations on judgments includes actions for garnishment). Specifically, Kentucky courts have used garnishment to enforce a judgment for royalties due from a mineral interest. *See Taylor v. Trogden*, 2002-CA-001775-MR, 2004 WL 690495 at *4 (Ky. Ct. App. Apr. 2, 2004) (upholding a garnishment order for payment of royalties from an oil and gas lease).

Macar and 7921's claims for royalties and profits from their property interests in oil wells are claims for money due under contracts and thus are enforceable through

7

execution and garnishment—not contempt. *See Taylor*, No. 2002-CA-001775-MR, 2004 WL 690495 at *4. Indeed, the plaintiffs seem to concede as much, given that they filed writs of garnishment to recover their royalties. *See* R. 60; R. 62; *see also* R. 71 (Macar and 7921's claim that they are now entitled to $76,206.14 as a result of their ownership interests in the oil and gas wells). And the KPO defendants agree that if the plaintiffs were to recover these amounts, it would be through a garnishment action. R. 76 (noting that the proper remedy to recover royalties and other payments is garnishment).

But the plaintiffs cannot succeed on their motion for garnishment. Why? Because the parties still dispute the amount due under the agreement. The original arbitration award did not resolve the parties' dispute: It merely parrots the contracts, confirming that the plaintiffs are due royalties and profits at varying rates. R. 28-1 at 5–6 (prefacing paragraphs with the phrase "[p]ursuant to the 7921/KPO [contract]"). The arbitration award does not independently calculate the value of the royalties and other profits in arrears—the very damages that the plaintiffs sought to recover through arbitration. *See id.* (noting that the KPO defendants shall "pay Claimant 7921 any amounts . . . received but . . . not yet paid"). *But see* R. 28-1 at 5 (reducing the value of the principal amount due under the contract to $466,187.00—a specific dollar amount). The parties accordingly continue to dispute what these "amounts" of "overriding royalty interest," "net profits participation," and "carried net profits interest" that arise under the contract are. *See* R. 75; R. 89.

The plaintiffs claim that they are entitled to royalty payments on the strength of their own word and the accuracy of their own calculations. *See* R. 61-1 (Affidavit of Andrew Golden); R. 61-2 (spreadsheets for calculating income from oil and gas wells).

But neither the affidavit nor the spreadsheet explains how to compute royalties or profits, or what particular technical terms like "overriding royalty interest" or "net profit participation interest" mean. Their calculations could very well be correct. Even so, they represent the plaintiff's own estimate of the value of damages from the KPO defendants' breach of the agreements. This value was the central question of the arbitration, and was part of the dispute that the arbitrator should have resolved completely, but didn't. *See* R. 4-1 at 9–10 (characterizing the failure to pay overriding royalty interests as a breach of a contract for which the plaintiffs seek damages). The Court cannot decide these facts on its own now, simply because the arbitrator neglected to do so in the first instance. Why? Because the contracts specify that any disputes that arise under the contracts must be resolved through arbitration. *See* R. 4-2 ¶ 9.09(b); R. 4-3 ¶ 9.09(b); R. 4-4 ¶ 7.7. The KPO defendants dispute the plaintiffs' calculations stridently, and this dispute about the value of royalties and profits due arises under the contract. *See* R. 75; R. 89. Determining the value of the royalty and profit payments is a task that the parties specifically assigned to the arbitrator; accordingly, this Court cannot make that determination under the guise of merely enforcing its judgment.

The plaintiffs had—and still have—alternatives that will allow them to collect royalties and payments in arrears. For one, the plaintiffs could have moved to clarify or modify the arbitration award. And indeed, the plaintiffs moved to clarify the arbitration award, but only to correct typographical errors and clarify the rate of interest applicable to awards under the contract. R. 28-4. The plaintiffs should also have submitted evidence to allow the arbitrator to set a certain amount of damages from the non-payment of royalties and profits from the oil and gas wells. But the plaintiffs can still bring another claim for

arbitration and ensure that the arbitrator reduces the payment of royalties and profits due to a definite dollar amount, just like the arbitrator reduced obligations owed to Macar for the purchase of oil and gas wells to a definite amount. *See* R. 28-1 at 5. Once the arbitrator does so, the plaintiffs can ask the Court to execute the judgment by filing a writ of garnishment, just like they did for the arbitrator's award of $466,187.00 to Macar. R. 50; R. 51; R. 52. Until then, the Court may not seize money from third parties on the basis of the plaintiffs' one-sided calculations alone.

Accordingly, it is **ORDERED** that:

(1) Macar and 7921's motion for contempt sanctions, R. 63, is **GRANTED** in part and **DENIED** in part.

(2) On **September 5, 2014**, at 11:30 a.m. the Court will hold a hearing at the United States Courthouse in London, Kentucky, to determine whether to issue civil contempt sanctions against the KPO defendants. The parties are responsible to have any necessary witnesses at the Courthouse and ready to testify no later than 11:15 a.m.

(3) The KPO defendants' Motion to Quash the Writ of Garnishment, R. 75, is **GRANTED**.

This the 19th day of August, 2014.

Signed By:
*Amul R. Thapar* AT
United States District Judge