UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| KENTUCKY PETROLEUM OPERATING LTD., | ) ) ) | Civil No. 12-164-ART |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| MAX L. GOLDEN, et al., | ) ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In this case, two security agreements functioned to take property out of the hands of two judgment debtors—Kentucky Petroleum Operating, LLC ("KPO, LLC") and Kentucky Petroleum Operating, Ltd. ("KPO, Ltd.") (collectively "the KPO debtors")—and out of the reach of their creditors, 7921 Energy, LLC ("7921") and Macar Investments, LLC ("Macar") (collectively "the Macar parties"). Similarly, the five Kentucky Petroleum entities—KPO, LLC; KPO, Ltd.; Kentucky Petroleum Limited Partnership ("KPLP"); Kentucky Petroleum Investment Corp. ("KPIC"); and N.A. Energy Resources Corp. ("N.A. Energy") (collectively, "the KPO entities")—work as alter egos of each other. That is, they are empty, interchangeable shells used to keep money out of the hands of creditors. But neither security instruments nor corporations may operate to defraud creditors. Accordingly, the Court will grant the Macar parties' motion for summary judgment to set aside the security agreements and pierce the corporate veil of the KPO entities, R. 115.

## BACKGROUND

In 2011, the Macar parties executed purchase and sale agreements ("PSAs") to sell oil and gas wells, leases, easements, and related equipment in Laurel County, Kentucky, to the KPO debtors. *7921 Energy, LLC, et al.*, v. *Ky. Petroleum Operating, Ltd., et al.* 6:13-cv-00201, D.E. 1-2 (Macar PSA), D.E. 1-3 (7921 PSA).[1] In time, the parties disputed whether the KPO debtors satisfied their obligations under the PSAs and entered arbitration proceedings to resolve this conflict. R. 28-1. The arbitrator held a hearing in April of 2013. *Id.* In August of 2013, the arbitrator issued an award of $466,187 in favor of the Macar parties against the KPO debtors. *Id.* at 5–6.

The Macar parties claim that trouble began in the four months between when the parties began arbitration and the entry of the final arbitration award. They assert that the KPO debtors did not want to have any property that could be used to satisfy an adverse judgment from the arbitration proceeding. To this end, they claim the KPO debtors mortgaged away the leases they bought under the Macar and 7921 PSAs. R. 123-2 at 2 (affidavit of Mehran Ehsan); D.E. 1-15 at 1 (mortgage).

The mortgage gave KPLP—a related Kentucky Petroleum entity under the control of Mehran Ehsan—an interest in the leases to secure a $484,077 debt the KPO debtors owed to KPLP. *Id.* In the mortgage, the KPO debtors agreed not to dispose of the leases "whether voluntarily, involuntarily, by operation of law or otherwise" without the written consent of KPLP. D.E. 1-15 at 2. If the KPO debtors did transfer any portion of the leases without

---

[1] The Court consolidated two related cases: *Ky. Petroleum Operating, Ltd. v. Max Golden, et al.*, 6:12-cv-00164 and *7921 Energy, LLC, et al.*, v. *Ky. Petroleum Operating, Ltd., et al.*, 6:13-cv-00201. R. 35. Docket entries from 6:12-cv-00164 are designated "R." and entries from 6:13-cv-00201 are designated "D.E."

KPLP's consent, KPLP could declare the debt immediately due and foreclose on the leases. *Id.* at 3. Taking a page out of playground negotiation, KPLP essentially called "dibs" on the leases in the event they ever left the KPO debtors' possession. Just to be doubly sure that only KPLP received the fruits of the leases, the KPO debtors assigned all of their "right[s], title[s], revenues, profits, and interests" in and from the leases to KPLP. R. 123-2 at 7–9. KPLP also perfected its security interest in the KPO debtors' leases—the collateral for the mortgage described above—by filing a UCC-1 financing statement with the Kentucky Secretary of State. *Id.* at 6.

The Macar parties now want to collect their arbitration judgment. They bring two arguments in support of obtaining money from the KPO debtors. First, the Macar parties claim that the KPO debtors fraudulently transferred the leases to KPLP by executing the mortgage in anticipation of the arbitration award. They accordingly seek to invalidate the transfer to reach the assets involved in that transaction. Second, the Macar parties allege that the five KPO entities—KPO, LLC; KPO, Ltd.; KPIC, KPLP, and N.A. Energy—are really alter egos of each other, making up a single corporate entity under the control of Mehran Ehsan. For this reason, the Macar parties seek to pierce the collective KPO corporate veils so they can pursue their arbitration judgment against whichever KPO entity holds the needed assets.

## DISCUSSION

"Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Laster v. City of*

*Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing Fed. R. Civ. P. 56 (c)). The moving parties—here, the Macar parties—bear the initial burden of demonstrating the absence of any genuine issue of material fact. *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012). If the Macar parties satisfy this burden, then the nonmoving parties—the KPO entities—must "set forth specific facts showing a triable issue of material fact." *Id.*

The parties disagree about what portions of the record the Court should view. Thus, before turning to merits of the Macar parties' fraudulent transfer and corporate veil claims, the Court must first resolve the evidentiary disputes.

## I.   Evidentiary Issues

The KPO debtors argue that the Court should disregard a number of the Macar parties' factual claims as lacking support in the record. Specifically the KPO debtors assert that the Court should not consider KPIC's and KPLP's Offering Memoranda filed with the British Columbia Securities Commission ("BCSC"), D.E. 1-9. The KPO debtors also claim that the Court should disregard the KPO debtors-KPLP mortgage, R. 1-15. Why? Because the documents represent inadmissible hearsay and they are "unauthenticated documents" attached as exhibits to the Macar parties' complaint. R. 123 at 14. Both objections lack merit.

The Federal Rules of Evidence define "hearsay" as a statement that (a) the declarant makes outside of the present trial or hearing, which is (b) offered to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). However, statements that constitute verbal acts—like the words of a contract—are not hearsay. *See* McCormick On Evid. § 249 (7th ed. 2013). The mortgage is a contract that outlines the rights of the KPO debtors and

KPLP. As a result, it is a verbal act and not hearsay. *Preferred Properties, Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 799 n.5 (6th Cir. 2002) ("The verbal acts doctrine applies where legal consequences flow from the act that words were said, e.g. the words of offer and acceptance which create a contract.") (internal quotation marks omitted); *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007) ("Statements that constitute verbal acts (e.g., words of contract or slander) are not hearsay because they are not offered for their truth.") (citing Advisory Committee Notes to Fed. R. Evidence 801(c)); *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1154 (9th Cir. 2000) (holding that an insurance contract is not hearsay "because it is a legally operative document that defines the rights and liabilities of the parties in this case.").

While the BCSC filings are out-of-court statements offered for the truth of their contents, not *all* such statements are hearsay. A statement is not hearsay if it is offered against an opposing party and made by (a) a person the party authorized to make the statement, or (b) the party's agent or employee on a matter within the scope of that relationship. Fed. R. Evid. 801(d)(2). Under Rule 801(d)(2), the BCSC filings are not hearsay. The Macar Parties seek to introduce the filings against their opponents—the KPO Entities. And Mehran Ehsan made the statements in the BCSC filings as the KPO Entities' agent. Ehsan controls the BCSC filings for all of the KPO entities. R. 91-2 at 11 (KPIC); R. 91-3 at 10 (KPLP); R. 91-4 at 12 (N.A. Energy); R. 90-5 at 14 (KPO, Ltd.), 27 (KPO, LLC). He signed the Offering Memoranda on behalf of the KPO entities. D.E. 1-9 at 64, 207. Furthermore, he manages all of the KPO entities in some capacity. He is President and CEO of KPIC, and controls N.A. Energy. R. 91-2 at 12 (KPIC); R. 91-4 at 11 (N.A. Energy). He

is President and CEO of KPO, Ltd. which wholly owns KPO, LLC and serves as the "only officer" of KPLP. R. 90-5 at 14 (unanswered requests for admission served on KPO, Ltd.); R. 90-5 at 27 (unanswered requests for admission served on KPO, LLC)[2]; R. 91-3 at 5 (answer to interrogatory by KPLP). Because he managed all of the KPO entities, Ehsan spoke as the agent of each of the KPO entities. *See Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1011–12 (6th Cir. 1999) (noting that a CEO's statements were that of an agent of the company). Thus, the BCSC filings are not hearsay.

While the mortgage and BCSC filings are not hearsay, the KPO entities contend that the Court still cannot consider the documents because they are unauthenticated and thus would not be admissible at trial. But a party moving for summary judgment need not submit evidence in a *form* that would be admissible at trial. *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 960 (6th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 324). Rather, a party must show only that the evidence itself would be admissible. *Id.* (citing *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007)). The Macar parties have met this burden as to both the BCSC Offering Memoranda and the KPO debtors-to-KPLP mortgage.

Evidence can be authenticated by testimony from a witness who has knowledge that the evidence is what its proponent claims it to be. 31 Fed. Prac. & Proc. Evid. § 7106 (1st ed.) The Macar parties could authenticate the Offering Memorandum through Ehsan, who has personal knowledge of the contents. By the same token, the Macar parties could

---

[2] On April 3 and 4, 2014, the Macar parties served the KPO debtors with Requests for Admission. A party has 30 days to respond to a Request for Admission. If a party fails to respond, the matter is deemed admitted and "conclusively established." Fed. R. Civ. P. 36(a)(3), (b). The KPO debtors did not respond within 30 days, move to withdraw the admissions, or challenge the use of the admissions on summary judgment.

6

authenticate the mortgage through Ehsan, as Ehsan signed the mortgage on behalf of the KPO debtors. D.E. 1-15 at 4.

The KPO entities do not suggest that either the Offering Memorandum or the mortgage are not what they purport to be. Nor do the KPO entities allege that the Macar parties *cannot* present the documents in a form admissible at trial. *Cf. Harden v. AlliedBarton Sec. Serv.*, No. 3:10-00779, 2013 WL 2467714, at *8 (M.D. Tenn. June 7, 2013) ("The objection now contemplated by [Rule 56] is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be." (internal quotation marks omitted)). Because the Macar parties could authenticate the Offering Memoranda and the mortgage, and therefore present the documents in an admissible form at trial, the Court may consider the documents at summary judgment. *See id.*; *Shazor*, 744 F.3d at 960.

## II. Fraudulent Conveyance

The Macar parties seek summary judgment on their claim that KPLP's UCC-1 statement and the KPO-to-KPLP mortgage are conveyances designed to defraud creditors—namely the Macar parties. The parties agree that Kentucky law governs the fraudulent conveyance claim.

In Kentucky, any conveyance of property made with the intent to "delay, hinder, or defraud creditors" is void as to those creditors. Ky. Rev. Stat. Ann. § 378.010. A conveyance that is intended to defraud subsequent creditors is void as to those creditors as well. *Myers Dry Goods Co. v. Webb*, 181 S.W.2d 56, 59 (Ky. 1944). In this case, the Macar parties were subsequent creditors because they eventually had a claim for damages against the KPO entities. *Lewis v. Barber*, 49 S.W. 328, 329 (Ky. 1932).

Kentucky acknowledges the difficulty of finding direct evidence of fraudulent intent—companies do not regularly announce plans to defraud creditors. To work around this problem, Kentucky courts have identified circumstances surrounding a conveyance that create a presumption of fraudulent intent, denominated "badges of fraud." *Pergrem v. Smith*, 255 S.W.2d 42, 44 (Ky. 1953); *Trent v. Carroll*, 380 S.W.2d 87, 89 (Ky. 1964); *Russell Cnty. Feed Mill, Inc. v. Kimbler*, 520 S.W.2d 309, 311 (Ky. 1975) (holding that badges of fraud are "widely recognized exceptions to the general rule" that fraud must be proved by clear and convincing evidence). If the Macar parties show that a badge of fraud accompanied the mortgage and UCC-1, then the burden shifts to the KPO debtors to show that they made the transfers in good faith. *Trent*, 380 S.W.2d at 89; *Griggs v. Crane's Tr.*, 200 S.W. 317, 319 (Ky. 1918). If the KPO debtors fail to carry that burden and rebut the presumption of fraud, the Macar parties are entitled to a directed verdict—or in this case summary judgment.[3] *Russell*, 520 S.W.2d at 311; *see also Rudisill v. Ford Motor Co.*, 709 F.3d 595, 609 (6th Cir. 2013) (holding that where state law supplies the rule of decision, state law also governs the effect of a presumption regarding a claim).

The Macar parties satisfy their initial burden. They allege the existence of several badges of fraud. *See* R. 115-1 at 23. But the Court need not evaluate whether the Macar parties have proved each alleged badge. Why? Because the parties agree that at least one badge of fraud is present here: the KPO debtors recorded both the mortgage and the UCC-1 statement after the arbitrator closed the hearing but before he issued the arbitration award—

---

[3] The summary judgment and directed verdict standards are the same. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252–53 (1986); *Robert Simmons Const. Co. v. Powers Regulator Co.*, 390 S.W.2d 901, 905 (Ky. 1965).

8

that is, during the pendency of a lawsuit.[4]  *Russell*, 520 S.W.2d at 311–12; *see also* R. 123 at 17 (conceding that the "the transfer was made while a suit for recovery of money was pending").  And a single badge of fraud is enough raise a presumption that the challenged transfer is fraudulent.  *See Russell*, 520 S.W.2d at 311–12; *Hagar v. Coleman*, 208 S.W.2d 518, 519–20 (Ky. 1948).  The burden now shifts to the KPO debtors to prove that they made the challenged conveyances in good faith.

Kentucky law is unclear about the standard of proof the KPO debtors must meet to show good faith.  *See Jadco Enterprises, Inc. v. Fannon*, 991 F. Supp. 2d 947, 953 (E.D. Ky. 2014) (noting the Kentucky Supreme Court's silence about whether badges of fraud must be rebutted by a preponderance of evidence or by clear and convincing evidence).  But the Court need not determine which evidentiary standard applies because the KPO debtors failed to carry their burden under either standard.  The KPO debtors do not argue or show that they made their transfer in good faith.  Instead, they deflect the good-faith inquiry in three ways.  First, the KPO debtors maintain that they did not consider the Macar parties to be their creditors when they recorded the UCC-1 and the mortgage.  If they did not consider the Macar parties to be creditors, the argument goes, they could not have engaged in bad faith against a creditor.  But the KPO debtors' subjective mental state is largely irrelevant.  Even if the KPO debtors did not consider the Macar parties their "creditors" when they recorded the UCC-1 and mortgage, the law did:  "A person who has a claim for damages against a grantor is a creditor within the meaning of [the fraudulent conveyance statute]."  *Lewis*, 49 S.W. at 329; *Hager*, 208 S.W.2d at 519–20 (finding a debtor-creditor relationship where the debtor

---

[4] The Court need not determine whether an arbitration proceeding is a "suit" because the KPO entities concede the point.  R. 123 at 17.

had "reason to believe and anticipate" that the creditor would take action against him). Moreover, section 378.010 protects both then-existing and subsequent creditors from a debtor's fraudulent conveyances. *Myers*, 181 S.W.2d at 59. Thus, section 378.010 applies even if the KPO debtors did not believe the Macar parties were creditors at the time they executed the mortgage and UCC-1.

Second, the KPO debtors dodge the good-faith inquiry by contending that their "fraudulent intent" is a fact question that must be decided by a jury. They cite a trio of bankruptcy cases and a brace of Court of Appeals decisions for the proposition that fraudulent intent is a fact question. R. 123 at 16. But those cases only get the KPO debtors halfway to their intended destination. Even assuming that fraudulent intent is a fact question, it does not follow that a jury must decide the issue in this case. Rather, the Court must grant summary judgment when—as here—there are no *disputed* issues of *material* fact. *See Devonshire v. Johnston Grp. First Advisors*, 166 F. App'x 811, 814 (6th Cir. 2006) (citing Fed. R. Civ. P. 56(c)). The KPO debtors do not present any evidence disputing that they harbored intent to defraud. Absent a genuine factual dispute, there is nothing to submit to a jury. The KPO debtors thus cannot prevail on their argument. Neither are they any closer to producing evidence showing that they transferred their mortgage and UCC-1 statement in good faith. So to survive summary judgment, the KPO Debtors would have to present *facts* that demonstrated a material issue as to fraudulent intent. This, they have not done.

Finally, the KPO debtors claim that they owed a debt to KPLP and paid it through the mortgage and UCC-1 statement. But the KPO debtors do not argue that their indebtedness is evidence that the transfer was made in good faith to satisfy a bona fide obligation. Rather,

they introduce the evidence of indebtedness for a limited purpose: to rebut the Macar Parties' contention that there exists a badge of fraud for conducting a transaction without adequate consideration. R. 123 at 18. But the badge of fraud concerning inadequate consideration is not relevant. As previously explained, the Court need not decide whether that badge of fraud applies because the parties agree that another badge of fraud governs this case. *See* R. 115-1 at 23 (noting that a badge of fraud exists because the KPO debtors made a transfer during the pendency of a lawsuit); R. 123 at 17 (conceding that the "transfer was made while a suit for recovery of money was pending"). By declining to argue that they mortgaged the leases to KPLP to settle a preexisting debt in good faith, the KPO debtors fail to rebut the outstanding badge of fraud regarding the suspicious timing of their transfer. Accordingly, they have not met any burden of proof for showing good faith. For this reason, the Macar Parties are entitled to summary judgment.

### III. Alter Ego/Piercing the Corporate Veil

The Macar parties also seek to "pierce the corporate veil" and treat the KPO entities as alter egos of each other, such that each entity is liable for the arbitration award against the KPO debtors. In Kentucky, alter ego liability boils down to "two dispositive elements: (1) domination of the corporation resulting in a loss of corporate separateness *and* (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." *Inter-Tel Tech., Inc. v. Linn Station Prop., LLC*, 360 S.W.3d 152, 165 (Ky. 2012). Courts should look to a pair of eleven-factor tests outlined in *Inter-Tel* to determine whether corporations have lost separateness. *Id.* at 163–64. And in addressing the injustice prong, the court must "state specifically the fraud or injustice that would be

sanctioned if the court declined to pierce the corporate veil." *Id.* at 165. The "injustice" must be something beyond merely leaving a creditor unable to collect. *Id.* However, the requisite injustice may be found where the parent company "cause[d] a subsidiary's liability and then render[ed] the subsidiary unable to pay the liability." *Id.* at 167–68 (citing *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 524 (7th Cir. 1991)). A second scenario that would satisfy the "promoting injustice" prong is "an intentional scheme to squirrel assets into liability-free corporations while heaping liabilities upon an asset-free corporation." *Id.* at 168 (quoting *Sea-Land*, 941 F.2d at 524).

### A. Corporate Separateness

The Court considers the following non-dispositive factors when determining whether corporations are separate entities: (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders. *Id.* at 163 (citing *Judson v. Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008)). Several of these factors weigh against the KPO entities: inadequate capitalization, failure to observe corporate formalities, commingling of funds, and diversion of assets to the detriment of creditors.

The KPO entities share leadership: Mehran Ehsan controls all five entities. Ehsan is sole owner, President, CEO, Treasurer, and Director of KPIC and KPO, Ltd. R. 91-2 at 12, R. 101-1 at 11. KPO, Ltd. is the sole owner of KPO, LLC and serves as the sole officer of KPLP. R. 90-5 at 27; R. 91-3 at 5. Ehsan also controls N.A. Energy and controls distribution of funds from KPLP. R. 91-4 at 11; D.E. 1-9 at 23 (KPIC's Offering Memorandum filed with the BCSC).

At least one KPO entity is undercapitalized: KPO, Ltd. Each of the KPO entities was initially funded with $10.00 capital contributions. *See* 90-5 at 28 (KPO, LLC), R. 123-1 at 6 (KPO, Ltd.), 91-2 at 12 (KPIC), 91-3 at 11 (KPLP), 91-4 at 12 (N.A. Energy). The audit report provided by KPO, Ltd. reflects no increase in share capital in 2011 or 2012. *Id.* It strains credulity to believe that $10.00 is sufficient capitalization to operate a business— indeed the KPO debtors do not attempt to argue that KPO, Ltd. *is* sufficiently capitalized. Thus, at minimum, KPO, Ltd. remains vastly undercapitalized.

The Macar parties rely on the same set of facts to prove that the KPO entities both disregarded corporate formalities and commingled funds. According to the Macar parties, the KPO entities pay each other's obligations and receive each other's revenues. *See*, *e.g.*, R. 90-5 at 15. Even in the KPO entities' arguments, they treat KPO, LLC and KPO, Ltd. as interchangeable: the defendants refer to the $484,077 debt owed to KPLP as being KPO, LLC's debt (R. 123-2 at 5), KPO, Ltd.'s debt (R. 123-1 at 1); and a joint debt of both KPO debtors (R. 123-2 at 7).

Finally, the Macar parties contend that the KPO entities have attempted to circumvent creditors by diverting assets from the KPO debtors to KPLP. This includes the conveyances

13

considered in section II, as well as a July 18, 2013, assignment wherein the KPO debtors "unconditionally assign[ed] . . . and agre[ed] to pay" KPLP all of their "right[s], title, revenues, profits, and interest" in the Macar and 7921 PSA leases. R. 123-2 at 7–9.

The KPO entities do not attempt to rebut any of these factors. *See* R. 123 at 19–21. Rather, they rely on their objections to considering the BCSC Offering Memoranda and insist that the Macar parties have not produced any evidence to support veil-piercing. But as discussed section I, *supra*, the Court can consider the Offering Memoranda on summary judgment.

The KPO entities also argue that because shareholder Mehran Ehsan is not a named defendant in this case the Court cannot pierce the corporate veil here. R. 123 at 19–20. The KPO entities are mistaken. Piercing the corporate veil allows a creditor to reach a corporation's shareholders to satisfy a judgment. *See Inter-Tel Tech.*, 360 S.W.3d at 168–69 (finding nothing inappropriate about bringing a piercing suit against "those who actually control the corporation and have rendered it judgment-proof").

The structure of the KPO entities resembles the subsidiary-parent-grandparent structure the Kentucky Supreme Court pierced in *Inter-Tel*. In *Inter-Tel*, the grandparent, parent, and subsidiary corporations acted interchangeably in filing tax returns—similar (though not identical) to the KPO debtors acting interchangeably to secure the $484,077 debt to KPLP. *See Inter-Tel*, 360 S.W.3d at 166. Like the *Inter-Tel* trio, the KPO entities share officers and leadership. *Id.* Finally, the *Inter-Tel* parent and grandparent corporations stripped the subsidiary of assets. *Id.* at 167–68. In similar fashion, KPLP took over the Macar and 7921 PSA leases and secured an interest in everything KPO, LLC owned. Like

14

the *Inter-Tel* entities, the KPO entities have exerted "little, if any, effort . . . in maintaining separate corporate identities." *Id.* at 166.[5]

### B.   Injustice Sanctioned by Recognizing the Corporate Form

Once the Court has determined that corporations have lost separateness, the Court must then identify the injustice that would be sanctioned by continued recognition of the corporate form. Under *Inter-Tel*, one such injustice is a parent corporation or director causing a subsidiary's liability and then rendering the subsidiary unable to pay that liability. 360 S.W.3d at 167–68.   Ehsan, who controls and directs all of the KPO entities, incurred liability on behalf of the KPO debtors by executing both the Macar and 7921 PSAs on behalf of the KPO debtors. *See* D.E. 1-2, 1-3. An arbitrator found that the KPO debtors breached the PSAs and awarded damages to the Macar parties. R. 28-1 at 5; 28-4 at 1–2. Ehsan then rendered the KPO debtors unable to meet their PSA obligations. As the Court explained in section II, the KPO entities—at the direction of Ehsan—stripped assets from the KPO debtors, meaning that the Macar parties could not collect their arbitration award. *See* Section II, *supra*. Accordingly, continued recognition of the separate corporate forms of the various KPO entities would sanction an injustice.

A second injustice is a scheme to shift assets to a liability-free corporation while shifting liabilities to an asset-free corporation. *Id.* In this case, all of the liabilities fell on the KPO debtors because they are the only parties named in the arbitration award. *See* R. 28-4 at 1–2 (clarifying that the arbitration award is against KPO, LLC and KPO, Ltd.). Meanwhile,

---

[5] Counsel for the *Inter-Tel* trio even mistakenly described an office as a branch office of both the parent and grandparent corporations—this tracks with the KPO debtors lack of clarity as to who actually owed $484,077 to KPLP. *Inter-Tel*, 360 S.W.3d at 166.

non-debtor KPLP took all of KPO, LLC's assets and all of the KPO debtors' revenue under the PSAs. *See* R. 123-2 at 6–9 (Assignment and UCC-1 statement); D.E. 1-15 at 2–3 (mortgage). On these facts, the continued recognition of the KPO entities' supposedly "separate" corporate forms would sanction injustice. *See Inter-Tel*, 360 S.W.3d at 168–69. Because the Court finds that the KPO entities lack corporate separateness and that recognizing separate corporate forms would sanction an injustice, the Court will pierce the corporate veil and treat the KPO entities as a single entity.

## CONCLUSION

The KPO entities used security interests and corporate structures to deprive their creditors of the ability to collect a duly-awarded judgment. The law does not permit debtors to use otherwise legitimate formalities like security interests and corporate structures to perpetrate fraud or injustice. Accordingly, it is **ORDERED** that Macar and 7921's motion for summary judgment, R. 115, is **GRANTED**.

This the 4th day of March, 2015.

Signed By:
Amul R. Thapar AT
United States District Judge