UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| KENTUCKY PETROLEUM OPERATING LTD., et al., | ) ) ) |
| Plaintiffs, | ) Civil No. 12-164-ART ) ) |
| v. | ) **MEMORANDUM OPINION** ) **AND ORDER** |
| MAX L. GOLDEN, et al., | ) ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Ordinarily, an arbitration award or the entry of summary judgment—or even the entry of summary judgment confirming an arbitration award—would signal that litigation is drawing to a close. Not so here. Each order seems to be fodder for a new dispute between these two parties—or in this case, the basis for revisiting an old one.

## BACKGROUND

More than four years ago, the parties on one side[1] of this litigation, 7921 Energy, LLC and Macar Investments, LLC (collectively "the Macar parties"), sold oil and gas leases to two of the parties on the other side: KPO, LLC, and KPO, Ltd. (collectively "the KPO debtors"). A dispute developed over whether the KPO debtors satisfied their obligations under those sales contracts and whether the Macar parties delivered all of the promised leasehold. After arbitration, the arbitrator awarded to Macar Investments a lump sum of $466,187. R. 28-1. He also awarded to both Macar and 7921 the royalties and revenues due

---

[1] The Court consolidated cross-suits between the two sides, R. 35, so it makes little sense to refer to them as "plaintiffs" or "defendants."

to them under the terms of the contracts. R. 28-1. The Court entered a judgment confirming the award. R. 32; R. 33.

The arbitration award and judgment did not resolve the dispute. While arbitration was pending, the KPO debtors executed a mortgage and UCC-1 financing statement that gave a related company, Kentucky Petroleum Limited Partnership ("KPLP"), a security interest in all of the leases they bought from the Macar parties. The KPO debtors also transferred to KPLP all of their rights and revenue from the leases. R. 123-2 at 6–9. So once the arbitrator issued his final award, the KPO debtors had no assets with which to pay the Macar parties. Predictably, this sparked more litigation.

The next round of litigation involved the Macar parties seeking to set aside the mortgage and UCC-1 statement as fraudulent conveyances. R. 115. To guard against any future asset-shifting, the Macar parties asked to pierce the corporate veil of five related entities: KPO, LLC, KPO, Ltd., KPLP, Kentucky Petroleum Investment Corp. ("KPIC"), and N.A. Energy Resources Corp (collectively designated "the KPO entities"). *Id.* Piercing the corporate veil would allow the Macar parties to collect their arbitration judgment against whichever entity held the needed assets. Two months ago, the Court entered summary judgment in favor of the Macar parties on both the fraudulent conveyance and veil-piercing claims. R. 142 (Memorandum Opinion and Order); R. 143 (Judgment). But the litigation continues still.

The KPO entities now ask the Court to reconsider its judgment pursuant to Federal Rule of Civil Procedure 59(e). R. 235. The KPO entities also seek to quash 45 writs of garnishment because execution of the judgment is stayed while a Rule 59 motion is pending.

R. 238.  For the reasons stated below, the Rule 59 motion will be denied, which in turn moots the motion to quash.

## DISCUSSION

The KPO entities contend that the grant of summary judgment was improper in four ways:  (1) the Court incorrectly considered non-evidentiary matters in deciding the case, (2) there is no evidence that the challenged conveyances were made in bad faith, (3) the Macar parties cannot pierce the corporate veil of the KPO entities, and (4) in light of a recent, post-judgment arbitration demand, the Court's order should not be final.  But in their motion, the KPO entities do not point to a "manifest error of law" in the prior opinion or "present newly discovered evidence"—the only acceptable grounds for a Rule 59(e) motion. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (quoting *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)).  Rather, the KPO entities largely present anew their old arguments against summary judgment.  A party cannot simply re-litigate old arguments in a Rule 59(e) motion, *see id.*, and their arguments fare no better on a second look.

I.     **Evidentiary Objections**

The KPO entities object, as they did in opposition to summary judgment, to 65 of the Macar parties' 125 statements of fact.  According to the KPO entities, the objected-to statements have no support in the record: 48 of the statements are based on KPIC's and KPLP's Offering Memoranda filed with the British Columbia Securities Commission ("BCSC"), two statements are based on the KPO debtors-to-KPLP mortgage, and the rest come from various "unauthenticated" filings in the record.  R. 235 at 3.  Relying on *Hanover

*Insurance Co. v. American Engineering Co.*, 33 F.3d 727, 730 (6th Cir. 1994), the KPO entities argue that the Court cannot consider the objected-to materials because they would not be admissible at trial. And because the grant of summary judgment relied on non-evidentiary materials, the argument goes, the judgment must be vacated.

Setting aside the fact that the KPO entities improperly reargue a rejected contention, the argument fails here for the same reason it did on summary judgment: the KPO entities are wrong about the law. Specifically, they misread *Hanover*. In *Hanover*, the Sixth Circuit explained that "[t]he same evidentiary standard of proof applies on summary judgment as would apply at trial on the merits." 33 F.3d at 730 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252–53 (1986)). The "standard of proof" referred to in *Hanover* and *Anderson* is the burden of proof a party must meet to prevail at trial. That is, if a party must prove its case by a preponderance of the evidence at trial, then the Court "asks [on summary judgment] whether reasonable jurors could find by a preponderance of the evidence that a plaintiff is entitled to a verdict." *Anderson*, 477 U.S. at 252. The *form* of evidence the Court may consider in answering that question is a different matter—one not addressed by *Hanover* or *Anderson*.

The Supreme Court did address the form-of-evidence issue in *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986), and its decision squarely contradicts the KPO entities' position. On summary judgment, a party does not have to submit evidence "in a form that would be admissible at trial." *Id.*; *see also Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 960 (6th Cir. 2014). Rather, a party need only show that the *substance* of the evidence would be admissible. *Shazor*, 744 F.3d 960 (citing *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir.

4

2007)). For the reasons outlined in the Memorandum Opinion, the Macar parties clear that hurdle as to the mortgage and BCSC Offering Memorandum. *See* R. 142 at 4–7. And review of the Memorandum Opinion reveals that the *material* facts for the purposes of summary judgment were found in the mortgage, the Offering Memorandum, and the KPO entities' discovery responses (or in some cases, lack thereof). The KPO entities' evidentiary arguments fail here as they did at summary judgment.

## II.     Fraudulent Conveyance

According to the KPO entities, the Macar parties were not entitled to summary judgment on their fraudulent conveyance claim. Citing "a fraud case," *Smith v. Treacy*, 172 S.W.2d 570 (Ky. 1943), the KPO entities contend that their good faith should be presumed, leaving the Macar parties to bear the burden of rebutting the presumption. R. 235 at 11. But that's not all. Even if the Macar parties *could* rebut the presumption, good faith "is . . . not amenable to summary judgment" because "intent is a question of fact." *Id.* The KPO entities' argument is unavailing for two reasons.

First, the KPO entities did not mention a presumption of good faith in their response to the Macar motion for summary judgment—indeed, they never even argued that they executed the challenged mortgage in good faith. *See generally* R. 123 at 15–19. A Rule 59 motion is not the place "to raise arguments which could, and should, have been made before judgment issued." *Engler*, 146 F.3d at 374. That ground alone would suffice to bar the late argument. *See id.*

Second, even if timely, the KPO entities' argument fails on the merits. The KPO entities were half right: the Court should presume that a transfer—like the mortgage

5

executed in this case—was made in good faith. But the inquiry does not stop there. Rather, "it is a well-settled rule" in Kentucky that badges of fraud will shift the burden to the transferee—in this case to KPLP—to "sustain the bona fides of the transaction." *Pergrem v. Smith*, 255 S.W.2d 42, 44 (Ky. 1953). Once a badge of fraud is shown—and the KPO entities admit a badge of fraud exists here, *see* R. 123 at 17—any presumption of good faith disappears. *Pergrem*, 255 S.W.2d at 44. A party is not "entitled to establish the lack of fraudulent intent before a jury," R. 235 at 11, simply on its say so. Rather, the KPO entities must identify the evidence they plan to take to the jury to establish their good faith. *See Celotex Corp.*, 477 U.S. at 322. Absent at least *some* evidentiary showing of good faith, the KPO entities cannot defeat the Macar parties' motion for summary judgment. *Anderson*, 477 U.S. at 256; *see also Celotex Corp.*, 477 U.S. at 322 (holding that summary judgment is proper against a party that cannot "establish . . . an element essential to [their] case, and on which [they] will bear the burden of proof at trial."). And, as explained in the Memorandum Opinion, the KPO entities failed to make the required evidentiary showing. *See* R. 142 at 9–11.

## III. Piercing the Corporate Veil

The KPO entities also seek reconsideration of the grant of summary judgment on the Macar parties' veil-piercing claim. They offer two challenges, neither of which prevail. First, the KPO entities contend that veil-piercing is not applicable here because the doctrine only permits a creditor to recover from a corporation's shareholders. It does not, the KPO entities argue, permit corporation-to-corporation piercing. Second, the KPO entities challenge the Court's adjudication of the second prong of the veil-piercing test: identifying

6

the injustice that would be sanctioned by continued recognition of the corporate form. Just as they were at summary judgment, "[t]he KPO entities are mistaken." R. 142 at 14.

First, the Macar parties may pierce the corporate veil between corporations without reaching the individual shareholders. The leading Kentucky case on veil-piercing did precisely that. *See Inter-Tel Tech., Inc. v. Linn Station Prop., LLC*, 360 S.W.3d 152 (Ky. 2012). The debtor in *Inter-Tel*, ITS, was a wholly-owned subsidiary of Inter-Tel Technologies, which was in turn a wholly-owned subsidiary of Inter-Tel, Inc. *Id.* at 155–56. The plaintiff sought to hold all three corporations responsible for ITS's debts. *Id.* The *Inter-Tel* court does not mention the individual shareholders of Inter-Tel, Inc. at all. The individual shareholders are not named defendants. Nevertheless, the Kentucky Supreme Court allowed the plaintiff, armed with a judgment against ITS alone, to enforce the judgment against all three corporations. *Id.* at 170. The same holds true here: The Macar parties may pierce the corporate veil of the five KPO entities and enforce their arbitration award—already confirmed by the Court, *see* R. 33—against whichever KPO entity has the assets needed to pay the judgment.[2]

The KPO entities' second contention—that the Court failed to identify the injustice that would be sanctioned by continued recognition of the corporate form—fails as well. The Memorandum Opinion clearly identifies the injustice at issue: Mehran Ehsan, who controls all five KPO entities in one form or another, stripped the KPO debtors of assets, which

---

[2] This is not limited to subsidiary-parent-grandparent corporation structures. *Inter-Tel*, 360 S.W.3d at 166 ("There is, however, authority for piercing the veil of any related entity where the facts justify it."); *see also Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 29 (1st Cir. 2000) ("Courts have pierced the veil in cases involving 'sibling' corporations, and in cases involving even more intricately arranged corporate structures.").

resulted in the KPO debtors' inability to pay their judgment debt to the Macar parties. R. 142 at 15–16. The KPO entities contend that no one stripped assets from the KPO debtors; rather, KPLP merely secured a valid debt in much the same way a bank would secure a loan it makes to one of its customers. This is not fraudulent, the KPO entities argue, it is merely "good business sense." R. 235 at 13. The KPO entities' argument is unpersuasive.

KPLP did not merely secure a debt. Instead, the KPO debtors "unconditionally assign[ed] . . . and agre[ed] to pay" KPLP all of their "right[s], title, revenues, profits, and interest" in the Macar and 7921 PSA leases. R. 123-2 at 7–9. A *mortgage* is a security interest—the KPO debtors' *assignment* was a full transfer of their assets to KPLP. And despite the KPO entities' "good business sense" spin on the transaction—which they neglected to mention at summary judgment—the result is the same: A director (Ehsan) caused the subsidiaries' liability (the KPO debtors' obligations to the Macar parties), and then rendered the subsidiaries unable to pay that liability. The corporate form is not meant to protect this kind of injustice. *See Inter-Tel*, 360 S.W.3d at 167–68.

IV.   **Finality of Judgment**

Finally, the KPO entities believe that the judgment, R. 143, should not be final under Federal Rule of Civil Procedure 54(b). "Rule 54(b) applies only to actions involving multiple parties or multiple claims." *Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1027–28 (6th Cir. 1994). If the Court enters a final judgment that either resolves fewer than all of the claims in an action or adjudicates the rights and liabilities of fewer than all of the parties, then the Court must certify that "there is no just reason for delay." Fed. R. Civ. P. 54(b). The KPO entities invoke Rule 54(b) on the ground that the judgment does not resolve

all of the claims in this action. According to the KPO entities, there are two matters left to resolve. The first is the Macar parties' entitlement to royalties and other interests ("the royalties") under the purchase and sale agreements ("PSAs") underlying this litigation. The second is an arbitration proceeding that the KPO entities initiated on March 30, 2015, to raise a breach of warranty claim against the Macar parties. R. 235-1. Neither matter constitutes a reason to delay final judgment.

The KPO entities cannot invoke Rule 54(b) on the basis of the outstanding royalty dispute. The Court directed the parties to arbitrate the value of the royalties due to the Macar parties under the PSAs. R. 118 at 4–5. Why? The Court cannot resolve the dispute because the PSAs specify that any disputes that arise under the contracts must be resolved through arbitration. *See* R. 4-2 ¶ 9.09(b); R. 4-3 ¶ 9.09(b); R. 4-4 ¶ 7.7. *See also* R. 98 at 9. There is no reason to delay final judgment if there is nothing left for the Court to resolve.

Nor can the KPO entities invoke Rule 54(b) on the basis of their eleventh-hour[3] arbitration demand. Why? Because the breach of warranty claim the KPO entities seek to arbitrate is not part of this action. The KPO entities never presented the claim to the Court for adjudication. Furthermore, the KPO entities themselves say that the claim "is not for this Court to decide." R. 273 at 2. Rule 54(b) only applies when "the action" presents multiple claims for relief and the judgment "adjudicates fewer than all of the claims." Rule 54(b) does not contemplate delaying final judgment based on issues that are not before the Court.

---

[3] Twelfth or thirteenth hour would, perhaps, be more accurate, as the KPO entities did not file the arbitration demand until nearly a month after the Court entered summary judgment.

## CONCLUSION

Accordingly, it is **ORDERED** that:

(1)  The KPO entities' motion to alter or amend judgment, R. 235, is **DENIED**.

(2)  The KPO entities' motion to quash, R. 238, is **DENIED AS MOOT**.

This the 7th day of May, 2015.

Signed By:
*Amul R. Thapar* AT
United States District Judge